3:24-mj-00002

| | |
|---|---|
| DISTRICT OF OREGON ) | |
| ) ss. | AFFIDAVIT OF NATHAN BRESEE |
| COUNTY OF MULTNOMAH ) | |

### Affidavit in Support of a Criminal Complaint

I, Nathan Bresee, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). I am a Special Agent with Homeland Security Investigations (HSI) and have been since December 2009. While employed with HSI, I have attended numerous training courses, including the Immigration and Customs Enforcement Special Agent Training course, Criminal Investigator Training Program, and specialized courses in narcotics trafficking investigations. I am currently assigned to the HSI Portland Narcotics and Bulk Cash Smuggling group in Portland, Oregon. I have 20 years of experience as a law enforcement officer. Prior to my employment with HSI, I was a Customs and Border Protection Officer (CBPO) assigned to the Contraband Enforcement Team. As a Special Agent, I have participated in numerous drug investigations as either the lead case agent or as a supporting investigative agent. I am familiar with narcotics traffickers' methods of operation, including the manufacture, storage, transportation, and distribution of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering. I am familiar with how drug traffickers utilize counter-surveillance techniques to avoid detection by law enforcement. Additionally, I have also been involved in investigations involving wiretaps as part of the federal investigations into narcotics trafficking.

## Purpose of Affidavit

2.      This affidavit is submitted to support a criminal complaint and arrest warrant for **RAFAEL AVINA TORRES**, Hispanic male, date of birth 09/xx/1986 (hereinafter, "**AVINA**"), and **LUIS ARNULFO URIOSTE BRACAMONTES**, Hispanic male, date of birth 09/xx/1997 (hereinafter, "**URIOSTE**") for possession with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substances, and engaging in a criminal conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substances, all in violation of Title 21 United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

3.      I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

## Confidential Informants

4.      HSI Confidential Informant SA-760-SE (CI-1) has provided reliable and actionable information to law enforcement in exchange for monetary compensation and immigration benefits since January 2014. No promises or guarantees have been made by investigators in order to gain the CI-1's cooperation. CI-1 has provided information that led to arrests and seizure of contraband. He/she has been convicted once for possession of controlled substances. He/she has admitted to having an extensive history of drug trafficking and has first-hand knowledge of marijuana, methamphetamine, cocaine, fentanyl, and heroin

distribution. Based on the CI-1's ability to conduct recorded, drug-related, phone calls with a Target Subject, and observations of physical surveillance that corroborate CI-1's ability to order narcotics from a Target Subject, I believe the information he/she has provided to be credible and reliable.

5.     HSI Confidential Informant SA-378-PT (CI-2) has provided reliable and actionable information to law enforcement in exchange for monetary compensation and immigration benefits since February 2019.  No promises or guarantees have been made by investigators in order to gain CI-2's cooperation.  The CI has provided information that led to arrests and seizure of contraband.  He/she has been arrested twice in Washington State for possession of controlled substances; one of which was vacated and the other dismissed.  He/she has admitted to having an extensive history of drug trafficking and has first-hand knowledge of marijuana, methamphetamine, cocaine, fentanyl, and heroin distribution.  Based on CI-2's ability to conduct recorded, drug-related, phone calls with a Target Subject, and observations of physical surveillance that corroborate CI-2's ability to order narcotics from a Target Subject, I believe the information he/she has provided to be credible and reliable

### Statement of Probable Cause

6.     In December 2023, I was contacted by investigators from HSI Seattle, who advised CI-1 was in phone contact with the user of cell phone number 1-XXXXXX7856, later found in the possession of **URIOSTE** at the time of his arrest.  Through their conversations, CI-1 learned **URIOSTE**, and his Drug Trafficking Organization (DTO), purported to be able to supply CI-1 with large quantities of methamphetamine in Portland, Oregon.

7. In the latter part of December 2023, at the direction of HSI Portland, CI-1, acting in his/her capacity as a CI, negotiated for the delivery of 80 pounds of methamphetamine to be delivered to Portland, Oregon, in exchange for $104,000 U.S. currency, or $1,300 per pound.

8. In January 2024, at the direction of HSI Portland, CI-1 introduced CI-2, as a narcotics courier who works for "their" (the CI's) DTO, and who would be completing the narcotics transaction on CI-1's behalf.

9. On January 2, 2024, I directed CI-2 to place a recorded phone call to **URIOSTE**, which he/she did. During their conversation, CI-2 advised **URIOSTE** that he/she would be arriving in Portland, Oregon the following day. Towards the end of their conversation, **URIOSTE**, advised CI-2 that he (**URIOSTE**) had everything ready.

10. On the morning of January 3, 2024, I directed CI-2 to place a recorded phone call to **URIOSTE**, which he/she did. During their recorded conversations, CI-2 advised that he/she had arrived in Portland, Oregon and arranged to meet with **URIOSTE** at a restaurant in Portland, Oregon. However, after subsequent conversations between the two of them, CI-2 believed he/she, based on the sound of **URIOSTE's** voice, might know the individual with whom he/she was speaking with. Out of an abundance of caution, the meeting between CI-2 and **URIOSTE** was cancelled. Investigators later determined CI-2 had mistakenly believed **URIOSTE's** voice belonged to an individual with whom CI-2 was loosely associated to.

11. That afternoon, I directed CI-1 to contact **URIOSTE** and arrange to meet him in a restaurant parking lot in Troutdale, Oregon, which he/she did. During their conversation, **URIOSTE** agreed to meet with CI-1 at the location, so that he (**URIOSTE**) could verify CI-1 was in possession of the needed funds to purchase the requested methamphetamine.

**Affidavit of HSI Special Agent Nathan Bresee**　　　　　　　　　　　　　　　　　　　　**Page 4**

12.     That evening, investigators observed as two dark colored Honda Pilots, bearing Washington State registration arrive at the restaurant parking lot in Troutdale, Oregon. Investigators later learned that **URIOSTE** was operating one Honda Pilot while **AVINA** was operating the other. Investigators observed **AVINA** walk across the parking lot and meet with CI-1, who was already staged inside the restaurant. Investigators then observed **AVINA** and CI-1 exit the restaurant, **AVINA** walked back to where the Honda Pilots were located. It was later learned, during a debrief of CI-1, **AVINA** had advised CI-1 he had brought the methamphetamine to the meet location. **AVINA** also directed CI-1 to move CI-1's vehicle closer to them in the parking lot to conduct the narcotics transaction, which CI-1 did.

13.     As CI-1 was transitioning through the parking lot, investigators observed **AVINA** and **URIOSTE** move one of the Honda Pilots in the parking lot, freeing up a space for CI-1 to park directly beside the other Honda Pilot. Once CI-1 had parked, investigators observed him/her meet with **AVINA** and **URIOSTE** at the rear of the Honda Pilot, at which point they opened the liftgate and showed CI-1 the requested 80 pounds of methamphetamine. CI-1 then called CI-2 and requested the buy funds be ready, which **AVINA** confirmed to be $104,000 U.S. currency. Upon the completion of the phone call, CI-1 shook hands with **AVINA** and **URIOSTE**, and investigators observed them part ways. Once CI-1 was a safe distance away, investigators initiated an enforcement action and arrested **AVINA** and **URIOSTE** without incident. Narcotics K-9 Deputy Michael Colburn with the Washington County Sheriff's Office, utilizing K-9 unit "Mando", conducted a sweep of the Honda Pilots. Deputy Colburn and K-9 "Mando" received a positive alert for the presence of narcotics in the Honda Pilot where investigators had observed CI-1, **AVINA,** and **URIOSTE** meeting. A search of the Honda Pilot resulted in the seizure of two cardboard boxes containing methamphetamine and a random

sample field tested positive for the properties of methamphetamine, a Schedule II controlled substance. Below are photographs of the methamphetamine seized from the vehicle:



///

///

///



14.     Investigators transported and processed the narcotics at the Washington County Sheriff's Office evidence room. The methamphetamine was determined to weigh approximately 35.37 kilograms (approximately 77.8 pounds).

15.     FBI Special Agent Bobby Gutierrez advised both **AVINA** and **URIOSTE** of their Constitutional Rights/*Miranda* Warning in the Spanish language.  **AVINA**, who was in possession of a Washington State driver's license in the name of Jorge Alejandro Garcia Carrillo, advised SA Gutierrez of his true and correct name, that he understood his rights, and asked for a lawyer to present for any future questioning.  **URIOSTE** advised SA Gutierrez that he understood his rights and agreed to speak with investigators. **URIOSTE** advised that he had been the one in cell phone communication with the CI's.  **URIOSTE** knew he was at the meet location to complete a drug transaction and knew the price per pound of methamphetamine was

**Affidavit of HSI Special Agent Nathan Bresee**                                                                                                    **Page 7**

Case 3:24-cr-00010-IM    Document 1-1    Filed 01/04/24    Page 8 of 10

$1,300 US currency. **URIOSTE** provided basic information about the property he and **AVINA** had been observed at prior to their arrest.

16.  That evening, investigators served a Washington State search warrant at residence in Vancouver, Washington, that **AVINA** and **URIOSTE** were seen at prior to being arrested in the District of Oregon. The search warrant resulted in the seizure of drug scales, additional methamphetamine, and a rifle from **AVINA's** room on the property. Investigators transported and processed the narcotics at the Clark County Sheriff's Office evidence room. The methamphetamine was determined to weigh approximately 1.81 kilograms (approximately 3.9 pounds) and a random sample field tested positive for the properties of methamphetamine. Below are photographs of the methamphetamine seized from **AVINA's** bedroom:



17.  I know, based upon my training an experience, that methamphetamine is typically used in quantities of one-tenth (.1) to one-quarter (.25) of a gram, either intravenously or

**Affidavit of HSI Special Agent Nathan Bresee**                                                              **Page 8**

smoked. I know a quarter gram of methamphetamine on the street can sell for around $10 to $20. Accordingly, I know that a person possessing approximately 30 kilograms of methamphetamine does not possess it for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

## Conclusion

18.     Based on the foregoing, I have probable cause to believe, and I do believe, that **RAFAEL AVINA TORRES** and **LUIS ARNULFO URIOSTE BRACAMONTES** committed the crimes of Possession with Intent to Distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance, and Conspiracy to Distribute and Possess with the Intent to Distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(1)(A), and 846. I therefore request that the Court issue a criminal complaint and arrest warrant for **RAFAEL AVINA TORRES** and **LUIS ARNULFO URIOSTE BRACAMONTES**.

///

///

///

**Affidavit of HSI Special Agent Nathan Bresee**                                                                                      **Page 9**

19. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*  
NATHAN BRESEE  
Special Agent, Homeland Security Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __8:45__ a.m./p.m on __4th__ day of January 2024.

_____  
HONORABLE JEFFREY ARMISTEAD  
UNITED STATES MAGISTRATE JUDGE